# Hugh Ely *vs.* David Stewart and J. J. Speed, Trustees.

Not every mistaken or erroneous statement by a vendor, in regard to the property, will authorise the vendee to refuse to comply with the terms of sale; it must be a misrepresentation in a matter important to the purchaser's interest, by which he is actually misled.

If the purchaser knows that the representation is false when made, it cannot be said to influence his conduct, and it is his own indiscretion, and not any fraud or surprise, of which he has any just complaint to make under such circumstances.

In this case the trustees, in their advertisement of sale, described the property, which was a manufacturing establishment, as possessing a water power of about fifteen feet fall. The purchaser had, for many years, been one of the owners of this property, and had united with the other owners in a deed conveying the property, and describing it as having about fifteen feet of water-power, and had ample means of information in regard to it. Held:

That under such circumstances, the purchaser did not rely upon the representations of the trustees, but upon his own information; and he cannot be released from his purchase on the ground that the actual fall of water was less than that described in the advertisement.

The owners of certain mill property and adjoining lands, conveyed, by deed, said property, with all water rights. This property, at the date of the deed, was using a race, for conducting the water from the river to the mill, from whence it was returned to the river below where the land, conveyed by the deed, was situate on both sides of the stream, but opposite to other lands owned by the grantors. Held:

That the grantee in this deed, and those claiming under him, have the right to return the water to the river below the point where the lands conveyed are situate on both sides of the stream.

The purchaser in this case, being one of the original owners of the property, and having means of information in regard to the situation of the property, far superior to those of the trustees, he cannot be relieved from his purchase, upon the ground that the representations made by the trustees in their advertisement were not true.

APPEAL from the court of Chancery.

In a cause pending in chancery between Joseph and Thomas White on the one side, and the Okisko Company and the Elysville Manufacturing Company, and others, on the other

Ely *vs.* Stewart and Speed.

side, a decree was passed on the 9th of July 1849, for the sale of the whole property of the Okisko Company, real, personal and mixed, and the appellees were appointed trustees for that purpose. The trustees after two previous ineffectual attempts, the one on the 4th, and the other on the 29th of September 1849, sold the property mentioned in the decree, at public auction, to Hugh Ely, the appellant, for $21,000, and in their report of the sale, after stating the sale, they say that Ely refused to comply with the terms of sale, and pray the passage of an order of resale at his risk and expense. With this report there were filed Ely's written acknowledgment of the purchase and the advertisement of the trustees. This advertisement states, among other things, that the property to be sold consists "principally of one of the most valuable water-powers on the Patapsco river, of about fifteen feet fall;" that "upon the land there are inexhaustible quarries of fine granite stone," and that, excepting a ground rent of $600, "the property will be sold clear and free of other incumbrances, under an indisputable title." The chancellor, on the 9th of November 1849, passed an order for a resale, unless cause be shown by Ely.

On the 1st December 1849, Ely put in an answer to the report, in which he admits his purchase and refusal to pay the purchase money or any part of it, and assigns his reasons. He says, that the advertisement by the trustees is part of the contract of sale, and that the trustees are not able to give title to the property advertised. He says, that there are not fifteen feet water-fall as advertised, and not even fourteen feet, even if the water could be backed up as described in the Okisko Company's title deeds, as he has discovered since his purchase. He further says, that the company's right to empty the water of its tail-race at a place where it is not owner on both sides, is denied. He files a plat A, and says, that the Ellysville Manufacturing Company is owner on the west side of the Patapsco from A on the plat, and had warned him not to empty the water of the tail-race opposite their land, and to empty the same where the Okisko Company was owner on both

sides; and that he is afraid to complete his purchase on these accounts, as other persons think the claim of the Elysville Manufacturing Company is good, and the difficulty would prevent his quietly enjoying or profitably selling, the loss to him being three feet of water and the use of two of the factories. He also says, that the mill-dam abutment on the west side of the river, was at figure 1 on his plat, but in 1847 it washed about fifty feet to figure 2, where it was on the lands of the Elysville Manufacturing Company, and that the Okisko Company extended its dam from (1) to (2) without having procured any title from the Elysville Company, and that the trustees, consequently, cannot give any title to that part of the dam; and that a dam constructed on the site of the old one is impracticable by the alteration of the stream. He also says, that even if the trustees could give a title to the present dam, they could not convey more than about twelve feet of water-power, and rather less, unless he can get from the Elysville Company the right to elevate the dam, which that company has notified him not to do. He prays, therefore, that the sale shall not be confirmed, nor the property set up at his risk.

Testimony was then taken on the subject of these exceptions. On the part of Ely, the purchaser, there was filed a letter from Thomas Ely, president of the Elysville Manufacturing Company, giving him the warning of which he speaks in his answer to the report, also a plat and survey, made by William D. Loder, a surveyor, and showing the fall in the river to be but twelve feet nine inches; also showing the location of the dam. The deposition of Loder was also taken explaining his plat, and stating, that he is well acquainted with the Okisko Company's lands, and never saw any granite thereon except what had been brought from other lands. On the part of the trustees the testimony of Alexander Murdock and Thomas Lansdale was taken, and an agreement of the parties engaged in starting the Okisko Company, and a deed from the Elysville Manufacturing Company to the Okisko Company, all of which are sufficiently set out in the opinion

of this court, as well as in the following opinion of the chancellor, (Johnson,) accompanying his order, from which this appeal was taken.

"'This case is again brought before this court upon the report of the trustees, filed on the 9th of November last, and the answer of Hugh Ely thereto, in which he objects to the ratification of the sale to him on several grounds. Depositions have been taken by the parties, and the questions argued by counsel for the trustees and the purchaser. The purchaser objects to the ratification of the sale, and, consequently, to the order prayed for by the trustees to resell the property at his risk, under the provisions of the act of 1841, ch. 216, upon the ground: 1st. That the representation given in the advertisement of sale of the extent of the water-power is incorrect, there being, as the purchaser alleges, less power than stated; and it is insisted in the argument, that it is entirely immaterial whether the purchaser himself knew the actual extent of the power; that he relied and had a right to rely upon the statement of the trustees, and although he himself knew that statement to be untrue he may avail himself of the misrepresentation to avoid the contract and get rid of his purchase. This position, however, I am fully satisfied is not sustained by the authorities, nor does it appear to me to be consistent with the reason and justice of the thing.

"If in this case the purchaser knew that the water-power was not about fifteen feet, as represented in the advertisement, and bid for the property intending to avail himself of the misdescription, to invalidate the sale, he was evidently trifling with the court, and baffling the efforts of the trustees to execute its decree. If such be the law, he might, with perfect safety to himself, have prevented others from purchasing by bidding over them, because the error of the trustees in the description of the water power, known to him to be erroneous, afforded him an effectual protection against his own bid. The rule as laid down in the books is very different from this, and, as I think, much more reasonable. In speaking of misrepresentations against which a purchaser will be relieved.

Mr. Justice Story says: 'They must be such as to mislead.' At *sec.* 191 of his *Equity Jurisprudence, Vol.* 1 he observes, 'that to justify an interposition in such cases, it is not only necessary to establish the fact of misrepresentation, but that it is a matter of substance, or important to the interests of the other party, and that it actually did mislead him.' And again, at section 202, the principle is restated thus: 'In the next place, the party must be misled by the misrepresentation, for if he knew it to be false when made, it cannot be said to influence his conduct, and it is his own indiscretion and not any fraud or surprise of which he has any just ground of complaint to make under such circumstances.' Under the circumstances of this case, and in view of the relation of the purchaser to the property, and his means of knowledge, I am quite satisfied he did not rely upon the representations of the trustees, and if this be so, even if he did not actually know that the representation was erroneous, but relied upon his own judgment, he cannot be relieved. 1 *Story's Equity, sections* 197, 200, (a.)   2 *Kent Com.,* 484, and note C.

"The next objection of the purchaser is founded upon the allegation, that he had been warned by the Elysville Manufacturing Company, that he would not be permitted to return the water which he might take from the bed of the stream back to the stream opposite the lands owned by them, but that he must return it to the channel at a point where he owned the lands on both sides of the stream, and if he is under a legal obligation to do this he will not only lose three feet of water-power, but lose the the use of the factories situated at certain points designated upon the plats. In considering this objection, it must be recollected that the property of the Okisko Company, the subject of the sale, was conveyed to it by the Elysville Manufacturing Company, and that the latter company consisted of the five *Messrs. Ely,* of whom *Hugh Ely,* the purchaser, was one. That the water-rights and privileges enjoyed by the Okisko Company from the date of the conveyance to it, were so enjoyed without the hinderance or molestation of the Elysville Company, and with their knowledge

and approbation; and that at a previous attempt made by the trustees to effect a sale, on the 4th of September 1849, the trustee who was counsel for the Elysville Manufacturing Company stated in reply to a question suggested by a gentleman who proposed to take an interest in the purchase, and in the presence and hearing of four of the Messrs. Ely, that 'the property would be sold with all the water-rights belonging originally to the factory, and as it then stood; that the sale was by the consent of all parties, that every difficulty had been removed, and that the whole property of the Okisko Company would be sold complete as it was; and that the dam at that time was in the same position it now occupies.' Now without undertaking to decide the legal question as to the obligation of the Okisko Company to return the water to the bed of the stream, as has been suggested, it seems to me it would be contrary to all principle to relieve Hugh Ely from his purchase, upon the ground of this warning of the Elysville Manufacturing Company now set up by him as a reason for his failure to comply with the terms of his purchase. Unquestionably he had abundant means of ascertaining the intentions and purposes of the Elysville Company in this respect, and it was his own folly and laches not to use the means of knowledge within his reach, and the loss, if any, resulting from this cause he may attribute to his own negligence and indiscretion. 1 *Story's Equity*, sec. 200, (a.) He was a member of that company, which, according to the evidence of Mr. Lansdale, consisted, by the admission of Hugh Ely, of himself and his brothers; and the property of the company, whose powers it is now supposed will be used adversely to the rights of the purchaser of the property of the Okisko Company, was an undivided family property, belonging to the family in common. The property of the Okisko Company was put up for sale as it then stood, and if the value of it is to be impaired by any exertion of hostile rights on the part of the company of which Hugh Ely was a member, I think he has no one but himself to blame for not ascertaining the fact earlier. As stated by an eminent judge, 'Courts of justice do

not sit for the purpose of relieving parties under ordinary cir-cumstances who refuse to exercise a reasonable diligence and discretion.'

"These remarks dispose also of the objections founded on the location of the dam, and the representations of the granite deposits. The purchaser was not *misled* by these representa-tions. He knew, or had much better means of knowing than the trustees, whether the representation was true or false, and he cannot be heard to say that he was deceived by the ven-dor's representations, for the rule in such cases is *caveat emp-tor.* I shall therefore pass an order authorising the trustees to resell this property at the risk of the purchaser, unless he comply fully with the terms of sale within a period limited for that purpose."

From this order the purchaser appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*Dulaney* for the appellant made the following points.

1st. That the statements and representations in the adver-tisement, entered into and formed a part of the contract of sale and purchase between the appellant and appellees.

2nd. That the title and condition of the property did not correspond with the statements and representations aforesaid, which were in their nature essential and material.

3rd. That the contract, therefore, was not binding on the appellant, and should not have been enforced against him by the decree directing that the property should be sold at his account and risk. 3 *Cranch,* 260.

*J. M Campbell* and *David Stewart* for the appellees, con-tended for an affirmance, upon the grounds and authorities set out in the chancellor's opinion, and also referred to 6 *Gill,* 253. 2 *Bland,* 644. And 7 *Gill,* 287, 289.

Ely *vs.* Stewart and Speed.

Eccleston, J., delivered the opinion of the court.

After repeated efforts to sell the property of the Okisko Company, it was eventually struck off to Hugh Ely, who refused to comply with the terms of sale. The trustees made a report of their proceedings, stating the refusal of the purchaser to comply, and asking for an order to resell the property at his risk. The purchaser filed his answer, stating several grounds of objection to the ratification of the sale, and to the passage of such an order as the trustee had asked for. Depositions were taken and filed. And on the 7th of May 1850, the chancellor passed an order, directing the trustees to resell the property, at the risk of Hugh Ely, unless he should comply with the terms of sale on or before the 31st day of the same month. From this order the present appeal is taken.

In the first objection urged by the purchaser, he refers to the advertisement as constituting part of the terms of sale, which described the property as having a water-power of about fifteen feet fall, when, in truth, there is not a fall of fourteen feet; which error or mistake, the purchaser contends, releases him from any obligation to complete the contract. But it is not at all times a necessary consequence, that a mistaken or erroneous statement by a vendor, in regard to the property, will authorise the vendee to refuse to comply with the terms of sale.

According to the rule as laid down by Judge Story, in the 1*st vol.* of his *Equity Jurisprudence, sec.* 191, a misrepresentation which will entitle a purchaser to relief, must lie in a matter important to his interests, by which he is actually misled. And in *section* 202, he repeats the doctrine that the party must be misled by the misrepresentation, and then adds: "For if he knows it to be false, when made, it cannot be said to influence his conduct, and it is his own indiscretion, and not any fraud or surprise, of which he has any just complaint to make under such circumstances."

We agree with the chancellor, in believing that under the circumstances of this case, and in view of the relation of the

purchaser to the property, and his means of knowledge, he did not rely upon the representations of the trustees, but upon his own information.

In the original contract of sale, which is an agreement between the Elysville Manufacturing Company, as vendors, and the persons who were about to become the Okisko Company, as vendees, this property is stated to have about fifteen feet fall of water power. This contract is dated the 15th of July 1845, and was signed by the five Messrs. Ely, (Hugh Ely being one of them,) "as individuals, and as the persons constituting the Elysville Manufacturing Company." For a considerable time previous to this agreement, Hugh Ely had an interest in this property, to the extent of one-fifth, and after the organization of the Okisko Company he was a member of it.

On the 22nd of May 1849, this property was advertised for sale by the president of the Okisko Company, by order of the board; and in the advertisement the water-power is said to be about fifteen feet fall. Being so intimately connected with the property; with such ample means of information in regard to it, in every respect, it cannot be supposed that he so relied upon the representation of the trustees in relation to the water power, as that it offered any inducement for him to buy, or that he was misled by it, to any extent. This objection therefore cannot avail him. In addition to *Story's Equity Jurisprudence*, above referred to, see 2 *Kent's Com.*, 485, and 1 *Sug. on Vend.*, 386, secs. 14 *and* 15.

The next objection is, that after the sale the purchaser was notified by the president of the Elysville Manufacturing Company, that the water which he might take from the river, by means of his dam, must not be returned to the stream, at any point below where he owned the land on both sides of the river. And if he cannot return the water below the point mentioned, he says he will lose three feet of water-power, and be deprived of the use of the factories included in the sale to him.

This objection cannot release the purchaser from his con-

tract, because he has the right, under the sale, to return the water to the river, below the point where the lands purchased by him are situate on both sides of the stream.

Prior to the 15th of July 1845, the Elysville Manufacturing Company were the owners of the land now held by them, and also of the land and mills which they sold to the Okisko Company. Previously to and at the time of that sale, there were mills situate upon the part included in the sale; which mills were supplied with water, by means of a race running through the land purchased by the Okisko Company, and after being used by the mills, the water was discharged into the river where the Elysville Manufacturing Company then held, and still hold, the land on the opposite side of the river. The dam which caused the water to flow into the race was but a very short distance above the point, where the land sold to the Okisko Company is situate on both sides of the Patapsco. From a little below the dam, down to the lower extremity of the land of this company, their property lies only on one side of the stream. If therefore they, by their purchase, acquired no right to discharge the water from their mills, as it was usually discharged, but were bound by law to return the water to the river, where they held land on both sides, it is manifest that their mills could not be used by them, except by the permission of the Elysville Manufacturing Company. Such a state of things would have made the water-power of very little value. But we cannot agree that the ground assumed in the notice given to Hugh Ely, which is the basis of his present objection, is correct in this case.

This was mill property, and no doubt but that the mills and the water-power constituted considerable portions of the estimated value of the whole property, which was $25,000. The original contract of the 15th of July 1845, stipulates, that "the Messrs. Ely shall deed to the association thus to be formed, their entire water-power and water privileges at Elysville, of about fifteen feet fall of the Patapsco Falls, together with about forty acres of land;" and after describing the land, proceeds to say, "the said forty acres of land to be conveyed

above embraces the whole site, upon which are now erected their merchant-mill, saw-mill, storehouse, and six family tenements." The object and design of which contract was to form a company or association, of which the five Messrs. Ely were to constitute a part, for the purpose of erecting and putting into operation a cotton factory upon the property described in the contract. The deed from the Elysville Manufacturing Company to the Okisko Company recites: "And whereas the parties hereto of the first part have lately sold and disposed of the land and premises hereinafter particularly described, with the improvements thereon and the appurtenances thereto belonging, and also all the water rights and privileges aforesaid, to the parties of the second part." And after granting the land, the deed proceeds, "together with the manufactory, and other buildings and improvements thereon erected, made or being, and the rights, ways, roads, woods, waters, water-courses, water-rights, privileges, hereditaments and appurtenances thereto belonging or in anywise appertaining, inclusive of the right and privilege of backing the water of Brice's run, as before mentioned."

The deed professes to convey a manufactory, with all water-rights, which property was then using a race, for the purpose of conducting the water from the Patapsco to the factory, from whence it was returned to the river, below where the land conveyed by the deed was situate on both sides of the stream. It cannot be that the Elysville Manufacturing Company, the grantors in this deed, have any right to impose upon the purchaser, Hugh Ely, such a restriction as is indicated in the notice given to him by the president of that company.

There are two other objections presented by the purchaser, one in reference to the dam, and the other in regard to the representation as to the granite deposites.

On the 4th of September 1849, this property was offered for sale by the trustees, on the premises. At which time, Hugh Ely and Thomas Ely, the president of the Elysville Manufacturing Company, were present, according to the testimony of A. Murdock. Thomas Lansdale confirms the state-

ment of Mr. Murdock in regard to Hugh and Thomas, and adds, that there were four or five, but is positive four, of the Elys present. The deposition of Murdock shows, that in reply to a question, it was stated by Mr. Speed, one of the trustees, in the presence and hearing of the whole company, that the property would be sold, with all the water rights belonging originally to the factory, and as they then stood. Lansdale states, that on this occasion, in the presence and hearing of the whole company, Mr. Speed said, "that the sale was by consent of all the parties, that every difficulty as to the sale was removed, and that the whole property of the Okisko Company would be sold complete, as it was." The same witness also says, "the dam at that time was in the same position it now occupies."

This testimony, together with the other matters disclosed in the record, force upon us the same conclusion in reference to the two last objections, at which we arrived in regard to the first.

The property originally was part of an estate belonging to Hugh Ely and his four brothers. He was a party to the original contract of sale, a party to the deed, and a member of both companies. As a member of the Okisko Company, he was a party defendant to the suit under which this sale was made. He was one of the complainants in a suit of the Elysville Manufacturing Company against the Okisko Company, claiming a vendor's lien. The decree in the present case for a sale was passed by the consent of all parties. He was present at the offer to sell, in September 1849, on the premises, and heard what was said by the trustee in regard to the intended sale; at which time, the dam was in the same condition as when the witness (Lansdale) was examined. Being so long deeply interested in the property, and having such ample means of knowing its state and condition, and the privileges attached, and being so intimately connected with both companies, it would require great credulity to believe that this purchaser did not rely upon his own information, but upon the representations of the trustees made at the sale, whereby

he was induced to purchase, and thus was led into error by them, to his prejudice. He must have known that his means of information were quite as good, if not far superior to those of the trustees.

The order of the chancellor will therefore be affirmed, and the cause remanded, for the purpose of having that order carried into effect. The court will sign a decree accordingly.

*Order affirmed and cause remanded.*